UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

ALEXIS FELICIANO,

Plaintiff,

Case No. 25-cv-0084-bhl

v.

TRUE AV SOLUTIONS, LLC,

Defendant.

---

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---

Plaintiff Alexis Feliciano is Afro-Puerto Rican and a former owner or "member" of Defendant True AV Solutions, LLC (True AV). He claims that True AV violated 42 U.S.C. §1981 by terminating his membership in the company due to his race and in retaliation for his statements opposing racial discrimination. (ECF No. 1.) On March 27, 2026, True AV filed a motion for summary judgment, arguing that the record, including contemporaneous documentation, confirms that the company ended Feliciano's membership due to his performance and unprofessional conduct, not for any discriminatory reason. (ECF No. 32 at 11–24.) In response, Feliciano primarily relies upon his own sworn declaration, in which he offers a series of factual assertions that he contends support an inference of discrimination. (ECF No. 44.) True AV objects to his declaration under the "sham affidavit" rule and urges the Court to disregard it to the extent it conflicts with his prior deposition testimony. (ECF No. 48 at 14–15.) Once this evidence is excluded, the company contends, the record supports the entry of summary judgment in its favor. (*Id.*) Because the Court agrees that the sham affidavit rule applies and that Feliciano has not otherwise come forward with sufficient evidence for a reasonable jury to find that True AV discriminated or retaliated against him on the basis of his race, True AV's motion for summary judgment will be granted.

## BACKGROUND

Defendant True AV LLC is a business that installs audio, video, and security systems. (ECF No. 42 ¶1.) Plaintiff Alexis Feliciano is Afro-Puerto Rican and a former member of True AV. (ECF No. 53 ¶1.)

From February 2022 through March 2023, Chad Goeman was the sole owner of True AV. (ECF No. 42 ¶¶1,10.) John Wojciechowski became a True AV employee in February 2022. (*Id.* ¶2.) Feliciano became a True AV employee in July 2022. (*Id.* ¶9.) Prior to their joining True AV, Wojciechowski and Feliciano had worked with and known one another for years. (*Id.* ¶¶3,5, 8.) Wojciechowski was in fact married to Feliciano's cousin. (*Id.* ¶4.)

In 2023, Goeman and Wojciechowski decided to restructure True AV as a Limited Liability Company. (ECF No. 42 ¶11.) At that time, Chad Goeman invited his cousin, Patricia Goeman, to become a member. (*Id.* ¶12.) Wojciechowski suggested that Feliciano be made a member. (*Id.* ¶13.) In response, Feliciano indicated he would only become a member if he continued to earn a salary. (*Id.* ¶16.) Ultimately, in March 2023, Feliciano, Chad Goeman, Patricia Goeman, and Wojciechowski executed an Operating Agreement establishing True AV as an LLC. (*Id.* ¶17.)

The Operating Agreement provided that Chad Goeman, Feliciano, and Wojciechowski each owned 24.5% of the company, while Patricia Goeman owned 26.5%. (*Id.* ¶18.) It also designated Chad Goeman, Patricia Goeman, and Wojciechowski as the company's Board of Directors, and classified Patricia Goeman, Wojciechowski, and Feliciano as Employee Members. (*Id.* ¶¶19–20.)

The company's owners had varying roles. Wojciechowski and Feliciano primarily obtained customers and performed installations, while Patricia Goeman oversaw True AV's administrative operations. (*Id.* ¶21.) Chad Goeman financed the company. (*Id.* ¶¶22–23; ECF No. 29-1 at 40.) In connection with the restructuring, the members agreed that Feliciano would be paid a salary and, for much of the relevant time period, he received a substantial salary while the other owners did not. (*Id.* ¶¶16, 26–29.) At the time Feliciano became an Employee Member, he received a yearly salary of $48,165, the same amount he had earned as an employee. (ECF No. 42 ¶28.) He was paid this amount until September 25, 2023, when he received a 40% raise. (*Id.* ¶32.)

The owners also discussed True AV applying to be considered a "Minority-Owned Business." They understood that to apply for this status the business would have to be at least 51% minority owned and in good standing for at least one year. (ECF No. 42 ¶¶33–35.) The

parties disagree about the outcome of these discussions. Feliciano insists he was told that True AV was eligible for Minority-Owned Business certification. (*Id.* ¶34.) He also acknowledges that True AV did not actually apply for this status because it was ineligible but claims that he and Wojciechowski nevertheless told others that True AV was a Minority-Owned Business. (*Id.*) He also claims that various customers told him that they selected True AV as a vendor for this reason. (*Id.*) True AV points out that the company was not eligible for certification at the time because it had not been in good standing for at least a year. (*Id.* ¶37.) It also disputes that customers chose True AV based on any representations concerning its Minority-Owned Business status and notes that many of its customers had already worked with Wojciechowski's prior company. (ECF No. 53 ¶2 (citing ECF No. 52-2).)

By the end of February 2024, just under a year after the Operating Agreement became effective, the other members became concerned about Feliciano's performance. According to True AV, Feliciano failed to cancel a software subscription in late February 2024, resulting in charges of over $3,000. (ECF No. 42 ¶38.) He also failed to properly review a customer's contract, leading True AV to perform work outside the scope of the contract for which it was not paid. (*Id.* ¶60.) Members also had concerns about Feliciano's calendaring being inaccurate and insufficient. (ECF No. 35 ¶45.) In addition, four employees raised concerns about Feliciano's job performance, including his professionalism, attendance, and leadership. (*Id.* ¶¶36–37.) Wojciechowski and Patricia Goeman also raised concerns about Feliciano wearing clothing that did not comply with True AV's dress code. (ECF No. 42 ¶46.)

Feliciano disputes some of these concerns. He denies that he failed to cancel the software subscription and insists that he continued to use that software and had no notice that the subscription needed to be cancelled. (ECF No. 42 ¶39.) A contemporaneous email thread, however, shows Feliciano communicating with a True AV staff member about attempting to cancel the software after the subscription had already renewed automatically, refuting his claimed lack of notice. (ECF No. 49-1 at 1–2; ECF No. 49-2.) Feliciano admits that a customer refused to pay for unauthorized work, but asserts it was caused by Wojciechowski's error and not by Feliciano's poor contract review. (ECF No. 42 ¶60; ECF No. 53 ¶11.)

In response to concerns about Feliciano's job performance, Wojciechowski, Patricia Goeman, and Feliciano met on March 1, 2024.[1] During the meeting, Wojciechowski commented

---

[1] Feliciano has presented excerpts from a video recording of the meeting. (ECF No. 46.)

that while Feliciano seemed comfortable in some situations, he appeared uncomfortable in others. As an example of the former situation, Wojciechowski noted Feliciano's comfort in speaking Spanish with True AV's customers at a Mexican restaurant, and used the phrase "your people" to describe those customers. (ECF No. 42 ¶¶52–54; ECF No. 46 at 0:00–0:52.) In that same meeting, Patricia Goeman noted that her attempts to help Feliciano did not seem to be working and suggested that he seek out a communication or life coach or that he find an "Hispanic male" mentor in the business world. (ECF No. 42 ¶54; ECF No. 46 at 1:14–2:12.) Feliciano took offense at these suggestions, asking why his mentor had to be a Hispanic male. (ECF No. 46 at 1:43–1:52.)

Feliciano's employment situation with True AV remained challenging and, later that month, on March 26, 2024, Wojciechowski sent Feliciano an email regarding a mandatory in-person owner's meeting the next day. (ECF No. 42 ¶63.) The email indicated that the meeting was intended to give Feliciano a final chance to address issues concerning his absenteeism and performance. (*Id.* ¶¶63–65.) Feliciano responded by sending Chad Goeman a text message and attached letter and asking to speak by phone prior to the meaning. (ECF No. 37-1.) The letter referenced two meetings with Wojciechowski and Patricia Goeman and characterized them as being focused on his race. (*Id.*) Chad Goeman then suggested the meeting be rescheduled and it was ultimately cancelled altogether. (ECF No. 42 ¶¶72–73.)

Two days later, on March 28, 2024, Feliciano sent Chad Goeman another text message and attached letter. Feliciano claimed that the work environment at True AV had become more hostile and that employees were no longer taking directions from him. (ECF No. 37-2.) He stated that Wojciechowski's responses to his concerns had been insufficient, because Wojciechowski responded by email only, and asked to have a discussion with Chad Goeman about these problems. (*Id.* at 2–3.)

During this same time period, True AV was having ongoing concerns with a large and behind-schedule installation project for a restaurant client called Café Benelux. In connection with that project, on March 30, 2024, a True AV employee, Anthony Wojciechowski (John Wojciechowski's son) sent Patricia Goeman an email titled "Formal Complaint." (ECF No. 38-1.) In the email, Anthony raised concerns on behalf of himself and another employee, Jason Cano, about Feliciano's absenteeism and lack of communication. (*Id.*) He also offered to provide more formal statements. (*Id.*; ECF No. 38; ECF No. 42 ¶80.) Although not mentioned in the email, Anthony Wojciechowski later claimed that Feliciano had slapped him in the back of the head on

March 27, 2024. (ECF No. 36 ¶14.) Feliciano denies the allegations in Anthony Wojciechowski's email and denies slapping him. (ECF No. 42 ¶¶42–45.) According to Feliciano, he continued to work full-time and met expectations, notwithstanding Anthony Wojceichowski's claims. (*Id.*)

On April 1, 2024, True AV employees attempted to finish the past-due installation at Café Benelux. (*Id.* ¶81.) Notwithstanding the ongoing concerns about his performance, Feliciano did not show up. (*Id.*) According to Feliciano, he was on a walk through for a different project and was not required to be there. (*Id.* ¶¶81–82.) He also claims that his shared schedule confirmed this competing obligation but that it somehow disappeared. (*Id.* ¶82.) Wojciechowski later admonished Feliciano for his absence. (ECF No. 35-2.)

On April 3, 2024, two days after skipping the Café Benelux installation, Feliciano sent an email to Wojciechowski stating that he had noticed a shift in how he was treated at the company. (ECF No. 35-5.) The following day, Wojciechowski sent Feliciano an email ending his membership in True AV. (ECF No. 35-6.) The termination email cited Feliciano's failure to cancel the software subscription, his having performed work outside the scope of a contract for which True AV was not paid, his failure to obtain insurance on a contract, his absences from required meetings, his inappropriate behavior to employees, and an "incident of physical confrontation with an employee" as the bases for the termination. (*Id*. at 2.)

**LEGAL STANDARD**

Summary judgment is appropriate if the record shows there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court must determine whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A fact is "material" if, under the governing law, it could have an effect on the outcome of the lawsuit. *Id.* at 248; *Contreras v. City of Chicago*, 119 F.3d 1286, 1291–92 (7th Cir. 1997). A dispute over a material fact is "genuine" only if a reasonable trier of fact could find in favor of the nonmovant on the evidence presented. *Anderson*, 477 U.S. at 248.

The moving party bears the burden of proving the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). To survive a properly supported summary judgment motion, the opposing party must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932,

937 (7th Cir. 2010) (citations omitted). If the parties assert different views of the facts, the Court must view the record in the light most favorable to the nonmoving party and resolve evidentiary conflicts in his favor. *E.E.O.C. v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000); *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011). If any reasonable trier of fact could find in the nonmovant's favor, then summary judgment for the movant is inappropriate. *O'Leary*, 657 F.3d at 630.

**ANALYSIS**

Section 1981 prohibits discrimination on the basis of race in the making, enforcement, and termination of contracts. 42 U.S.C. §1981(a). It prohibits discrimination that blocks new contracts, as well as discrimination that impairs existing contractual relationships. *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006); *Morris v. Office Max, Inc.*, 89 F.3d 411, 413 (7th Cir. 1996) (citing *Rivers v. Roadway Express, Inc.*, 511 U.S. 298 (1994)). Plaintiffs may bring claims for discrimination and for retaliation against them for exercising rights secured by Section 1981. *CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 446 (2008).

Feliciano contends that True AV made him a member-owner to make the company eligible for Minority-Owned Business status only to later remove him when it pivoted to pursuing "white corporate" customers, instead of small businesses or government contracts. (ECF No. 41 at 15–17.) He asserts that the other members also retaliated against him for raising his concerns of racial discrimination to Chad Goeman in late March 2024. (*Id.* at 18.) True AV insists that it terminated Feliciano's membership because his performance and attendance declined and his behavior was sometimes unprofessional. It supports its defense with contemporaneous communications documenting Feliciano's performance and conduct issues, including employee complaints about him. (*See, e.g.*, ECF No. 38-1; ECF No. 35-2; ECF No. 35-3; & ECF No. 36-1.)

**I. True AV is Entitled to Summary Judgment on Feliciano's Discrimination Claim.**

To establish a *prima facie* case of racial discrimination under Section 1981, Feliciano must show that (1) he is a member of a racially protected class; (2) True AV intended to discriminate against him on the basis of race; and (3) the discrimination concerned the making or enforcing of a contract. *Morris*, 89 F.3d at 413. Section 1981 also requires that race be a but-for cause of a plaintiff's injury. *See Comcast Corp. v. Nat'l Ass'n. of African Am.-Owned Media*, 589 U.S. 327, 333 (2020).

At summary judgment, Feliciano must come forward with enough evidence to permit a reasonable factfinder to conclude that his race caused the challenged action. *See Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016). Seventh Circuit caselaw permits courts to use two similar methodologies at summary judgment. First, under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), a plaintiff alleging employment discrimination must first establish a *prima facie* case of discrimination. If the plaintiff does so, the burden shifts to the defendant to produce evidence of a legitimate, nondiscriminatory reason for its decision. *Id.* If the defendant makes this showing, the plaintiff must then present evidence that the nondiscriminatory reason is pretextual. *Id*. Because the *prima facie* and pretext inquiry often overlap, if a defendant offers a nondiscriminatory reason for its actions, courts can proceed directly to the pretext inquiry. *Barnes v. Board of Trustees of Univ. of Ill.*, 946 F.3d 384, 389 (7th Cir. 2020). Second, the Seventh Circuit recognizes that courts can simply assess the evidence at summary judgment consistent with its teaching in *Ortiz* and determine whether the evidence would permit a reasonable jury to find a causal connection between plaintiff's protected status and the challenged action. *Id*.

With respect to Feliciano's *prima facie* case, True AV does not contest that Feliciano is a member of a racial minority, and while it contends that he has not shown any discrimination in the making or enforcement of a contract, its primary summary judgment argument is that the record will not support a finding that it terminated his membership based on his race. (ECF No. 32 at 1–2.) True AV points to evidence it contends confirms that it terminated Feliciano's membership for legitimate, nondiscriminatory reasons: his poor attendance, communication, performance, and unprofessional behavior. (ECF No. 32 at 20–22.)

True AV's evidence that nondiscriminatory reasons support Feliciano's termination include evidence of other members' efforts to address their contemporaneously expressed concerns about Feliciano's performance before his termination, including meetings (which Feliciano admits occurred) and emails discussing his declining performance. (ECF No. 42 ¶¶47–49, 52, 63–67.) True AV also points to an employee complaint from Jason Cano and Anthony Wojciechowski to Patricia Goeman concerning Feliciano's poor attendance and communication at the Café Benelux project. (ECF No. 38-1.) The company cites John Wojciechowski's deposition testimony describing his repeated attendance at the Café Benelux project, where Feliciano was conspicuously absent and offered incomplete explanations of where he was or what he was doing. (ECF No. 39-

1 at 73:3–74:23.) In his declaration, Anthony Wojciechowski also states that Feliciano hit him in the back of the head on March 27, 2024. (ECF No. 36 ¶14.) True AV's April 4, 2024 termination letter to Feliciano references "an incident of physical confrontation with an employee." (ECF No. 29-2.) True AV also points to evidence that Feliciano made several costly mistakes, like failing to cancel a software subscription before an auto-renewal resulted in a hefty charge. (ECF No. 49 ¶3.) While Feliciano disputes that he was ever instructed to cancel a software subscription, True AV has introduced the email exchange in which he corresponded with True AV's bookkeeper about trying to cancel the software late and recoup the costs. (ECF Nos. 49; 49-1; 49-2; & 49-4.) True AV also maintains that Feliciano has not shown that its explanation is pretextual. (ECF No. 32 at 20–22; ECF No. 48 at 7–8.)

In response, Feliciano disputes True AV's nondiscriminatory explanation and insists it is pretextual. (ECF No. 41 at 15–16.) Nearly all the evidence Feliciano relies upon to support this position, however, comes from his own sworn declaration. Through the declaration, Feliciano adds to the summary judgment record a number of claimed incidents of discrimination that he did not identify when questioned at his deposition. (*Compare* ECF No. 44 *with* ECF No. 50-1.) True AV argues that because these statements are inconsistent with his prior sworn testimony, the Court should not consider them at summary judgment. (ECF No. 48 at 14–15.) Under the "sham affidavit rule," courts are permitted to disregard new evidence introduced for the first time at summary judgment that contradicts the party's prior deposition or other sworn testimony. *James v. Hale*, 959 F.3d 307, 316 (7th Cir. 2020). The rule exists to "weed out unfounded claims, specious denials, and sham defenses" by preventing a party from conjuring a dispute of material fact out of nothing. *Id.* (citing *Babrocky v. Jewel Food Co.*, 772 F.2d 857, 861 (7th Cir. 1985).

The record confirms that Feliciano's declaration adds new factual details that Feliciano failed to mention in response to questions at his deposition. For example, Feliciano states in his declaration that Wojciechowski: used racially offensive language on multiple occasions while talking to him; disparaged black businessowners, his own wife, and the other members of True AV, and stated that he wanted to stop pursuing contracts with smaller Minority-Owned Businesses. (ECF No. 44 ¶¶6–8.) His summary judgment declaration also describes for the first time a March 14, 2024 lunch with Wojciechowski at which Wojciechowski belittled his concerns about Patricia Goeman and Wojciechowski being racists and then used a racial slur himself against Feliciano. (*Id.* ¶9.) Feliciano failed to mention any of these items during his deposition, despite being asked

questions that would have called for their disclosure. For example, he was specifically asked to identify all instances of his alleged "belittlement" by the other members of True AV. (ECF No. 50-1 at 53:18–54:2.) Feliciano responded by identifying comments that he dressed "too loud," that his accent was sometimes hard to understand, and that his tattoos were not a good representation for the company. (*Id.* at 54:2–15.) When asked if there was "[a]nything else?," he replied "[n]ope." (*Id.* at 54:20–21.) Minutes later, Feliciano was asked whether there were any other items he had not disclosed and responded "No." (*See id.* at 55:12–56:2.) Feliciano did not mention the March 14, 2024 lunch meeting or any of the other disparaging racial remarks by Wojciechowski that he now raises in opposition to True AV's summary judgment motion.

Because True AV has shown specific inconsistences between his deposition testimony and his declaration, Feliciano must give a plausible explanation for the inconsistency between his deposition testimony in the declaration itself. *See Beckel v. Wal-Mart Associates, Inc.*, 301 F.3d 621, 623 (7th Cir. 2002) (collection cases). He has not even attempted to do so here. Nothing in his declaration explains or even refers to his inconsistent deposition testimony. Accordingly, the Court will exclude and not consider those portions of Feliciano's declaration relating to Wojciechowski's alleged demeaning comments about minority businessowners, the other members of True AV, and his own wife, and the March 14, 2024 meeting.[2] Feliciano simply cannot introduce new details into the summary judgment record by declaration to manufacture a dispute of material fact. *Clacks v. Kwik Trip*, *Inc.*, 108 F.4th 950, 956 (2024) (citing *Buckner v. Sam's Club, Inc.*, 75 F.3d 290, 293 (7th Cir. 1996).

The issue at summary judgment thus becomes whether Feliciano has marshaled sufficient other evidence to permit a reasonable jury to find that True AV terminated his membership due to his race and/or that True AV's proffered explanation—Feliciano's performance—is a mere pretext. Feliciano's briefing unhelpfully switches between a first-person narrative and outline form, making his arguments hard to follow. (ECF No. 41.) He asserts that he has put forth evidence of "direct racial animus," (*id.* at 15), but, beyond the statements in his declaration that

---

[2] In addition, Feliciano admits in his deposition that his clothing had previously been an issue at True AV, contradicting his declaration's assertion that he always wore either company branded clothing or other appropriate work clothing. (*Cf.* ECF No. 50-1 at 54:3–4; ECF No. 44 ¶13.) His assertions about his clothing being appropriate will therefore also be excluded. The Court also notes that Feliciano's declaration includes accusations that Wojciechowski made a number of rude comments about Chad Goeman and Wojciechowski's own wife. These allegations have no relevance to whether True AV discriminated against Feliciano and appear to be included solely to make Wojciechowski look bad. They too will not be considered.

the Court has found are barred by the sham affidavit rule, his evidence of discrimination and pretext is limited.

Feliciano relies heavily on comments made by Wojciechowski and Patricia Goeman in the March 1, 2024 meeting called to address his performance issues which refer to his ethnicity. He presents a short excerpt of a videorecording of the meeting that includes the comments. (ECF No. 46 at 0:00–0:52, 1:14–2:12.) He also claims that the other members on True AV, at some unspecified date, informed him that "his culture, appearance" were not "a good fit" for where True AV was headed, and that he was not at their level. (ECF No. 41 at 15.) He argues that "these race-inflected comments, coupled with the 'not a good fit' rationale, are probative of discriminatory intent and pretext, creating triable issues." (*Id.* at 16.)

Feliciano overstates the significance of this evidence and cites no case law in support of his conclusion that this evidence is sufficient to show discrimination or to allow a jury to find that True AV's nondiscriminatory explanation is mere pretext. In context, the comments from the March 1, 2024 meeting are not enough to carry Feliciano's burden. The record confirms that Wojciechowski and Patricia Goeman set up the meeting to address Feliciano's performance issues and to try to help him get back on track. (ECF No. 42 ¶52.) Wojciechowski's comment, noting that Feliciano appeared at ease while communicating with Hispanic clients, but less comfortable in other situations, (*id.* ¶53), does not suggest discriminatory animus. Similarly, Goeman's suggestion that Feliciano might benefit from the guidance of a male Hispanic mentor, given that her own efforts to help him did not seem to be working do not suggest True AV acted out of impermissible racial animus when it terminated him over a month later. Both comments must be viewed as part of the larger narrative, established by the summary judgment record, in which the other True AV members had ongoing conversations with Feliciano about his performance issues and made repeated efforts to address those issues. Moreover, Feliciano never explains what he means by his statement that the other members described Feliciano as "not a good fit." As True AV points out, he does not describe when this comment allegedly was made, by whom exactly, or how it would be itself evidence of discrimination. (ECF No. 48 at 9.)

The Court agrees with True AV that Feliciano has not introduced admissible evidence that suggests True AV would not have terminated his membership absent his race, or that True AV's reason is pretextual. *Ortiz*, 834 F.3d at 765; *Comcast Corp.*, 589 U.S. at 333. The admissible evidence is insufficient to permit a reasonable finder of fact to conclude his race caused True AV

to terminate his membership contract. *Ortiz*, 834 F.3d at 765. The Court also agrees with True AV that Feliciano's evidence is insufficient to suggest that True AV's proffered reason for his termination is pretextual. In the context of Section 1981 employment discrimination, pretext is a lie, a "phony reason" behind an action, and not just poor reasoning or a judgment on the part of the employer. *Saud v. DePaul Univ.*, 154 F.4th 563, 567 (7th Cir. 2025) (quoting *Napier v. Orchard Sch. Found.*, 137 F.4th 884, 892 (7th Cir. 2025)). Pretext is therefore not shown when the employer honestly believed the reason given for its decision. *Anderson v. Street*, 104 F.4th 646, 654 (7th Cir. 2024); *Cunningham v. Austin*, 125 F.4th 783, 789–90 (7th Cir. 2025). While Feliciano denies showing up late, missing work, or hitting Anthony Wojciechowski, he does not present any admissible evidence that would suggest that the other members should not have believed complaints raised by True AV's employees.

Feliciano also invokes comparator evidence and asks the court to draw an inference of pretext from evidence that True AV treated Wojciechowski differently. (ECF No. 41 at 17); *Upchurch v. Indiana*, 146 F.4th 579, 588 (7th Cir. 2025). To use comparator evidence, however, a plaintiff must generally show that the comparators dealt with the same supervisor, were subject to the same standard, and engaged in similar conduct without differentiating circumstances as would distinguish their conduct or their employer's treatment of them. *Saud*, 154 F.4th at 568 (quoting *Napier*, 137 F.4th at 894). Feliciano has not introduced any admissible evidence to support this theory that Wojciechowski is a comparable Employee Member. The portions of his declaration accusing Wojciechowski of making unprofessional and derogatory comments have been excluded and, even if they were not, Feliciano does not assert that he alerted Chad or Patricia Goeman to these comments or did anything to make them known to the other members of True AV. (ECF No. 44.) He cites no caselaw that would support his conclusory assertion that Wojciechowski is a proper comparator. To the contrary, the accusations of misconduct he launches at Wojciechowski—insulting Chad and Patricia Goeman, and True AV's customers, among others to *him*—hardly make him a suitable comparator, when the evidence of Feliciano's poor performance consists of skipping work, behaving unprofessionally, and hitting an employee. *See Brooks v. Avancez*, 39 F.4th 424, 437 (7th Cir. 2022) (putative comparator's conduct, making rude and profane statements, was too dissimilar to plaintiff's alleged conduct, threatening coworkers, to be a suitable comparison).

Because Feliciano has failed to provide evidence from which a reasonable jury could conclude that his termination was the result of discrimination based on his race, True AV is entitled to summary judgment on Feliciano's discrimination claim.

## II. True AV is Entitled to Summary Judgment on Feliciano's Retaliation Claim.

Section 1981 also prohibits retaliation for opposing discrimination in the making or enforcing of contracts. *CBOCS W., Inc.*, 553 U.S. at 445. To survive summary judgment, Feliciano must put forth evidence such that a reasonable trier of fact could find that (1) he engaged in a statutorily protected activity, (2) he suffered an adverse employment action, and (3) a causal link between the two exists. *Oliver v. Joint Logistics Managers, Inc.*, 893 F.3d 408, 413 (7th Cir. 2018); *O'Leary*, 657 F.3d at 630. Statutorily protected conduct includes conduct that a plaintiff reasonably and in good faith believed was statutorily protected. *Tate v. Exec. Mgmt. Servs., Inc.*, 546 F.3d 528, 532–33 (7th Cir. 2008). Courts regularly consider circumstantial evidence like suspicious timing, ambiguous statements of animus, evidence other employees were treated differently, or evidence that the employer's proffered reason is pretextual when determining causation. *Coleman v. Donahoe*, 667 F.3d 835, 860 (7th Cir. 2012). When a plaintiff has assembled enough evidence to allow the trier of fact to conclude that it is more likely than not that discrimination caused the adverse action, then summary judgment for the defendant is not appropriate. *Morgan v. SVT, LLC*, 724 F.3d 990, 996 (7th Cir. 2013). While Feliciano engaged in protected activity and suffered an adverse employment action, he has not come forward with evidence to support the required causal link between the two.

Feliciano's message to Chad Goeman on March 26, 2024, raising concerns about potential racial discrimination against him could qualify as a protected activity. (ECF No. 37-1); *see O'Leary*, 657 F.3d at 631. Likewise, his March 28, 2024 communication to Chad Goeman, (ECF No. 37-2), and April 3, 2024, message to Wojciechowski about his treatment in the LLC also likely constitutes protected activity. (ECF No. 35-5.) And Feliciano's employment and ownership interest as a member of the LLC was terminated. (ECF No. 35-6.) This would constitute an adverse action.

To establish a causal link between his protected activity and the termination of his membership in True AV, Feliciano relies primarily on timing or temporal proximity. (ECF No. 41 at 18.) He was terminated on April 4, 2024, quite soon after sending his messages. But this argument ignores the basic chronology of the relevant events. Feliciano messaged Chad Goeman

immediately *after* receiving notice from Wojciechowski about a final meeting meant to address the unresolved issues about his performance. (ECF No. 42 ¶¶63–68.) That meeting emphasized that it would be the *final* opportunity to resolve the issues professionally, as the members had already made several unsuccessful attempts, and that termination may occur if he did not attend or if the meeting was unsuccessful. (*Id.* ¶66.) This occurred after over a month of conversations about Feliciano's performance and how to improve it. (*Id.* ¶¶52, 55, 57.) His termination also occurred days after Feliciano's absence from a large project on April 1, 2024 inconvenienced his employees and coworkers, and after Wojciechowski communicated his concerns about that absence. (ECF No. 35-2.) True AV has introduced evidence that Feliciano's performance was already an issue and discussed multiple times well before he sent his messages to Chad Goeman.

Moreover, as discussed above, Feliciano has not shown that True AV's reason for terminating his employment was pretextual. For those reasons, True AV is also entitled to summary judgment on Feliciano's retaliation claim.

## CONCLUSION

Feliciano has not presented admissible evidence that would allow a reasonable jury to rule in his favor on either of his claims. *Ortiz,* 834 F.3d at 765. True AV has also offered substantial evidence to support its nondiscriminatory reason for Feliciano's termination, which Feliciano has not shown is pretextual. The Court will grant True AV's motion for summary judgment, and Feliciano's claims will be dismissed with prejudice. As this case will be dismissed, True AV's motions in limine will be denied as moot.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's motion for summary judgment, ECF No. 31, is **GRANTED**. Plaintiff's claims will be dismissed. The Clerk is directed to enter judgment accordingly.

**IT IS FURTHER ORDERED** that Defendant's motions in limine, ECF No. 61, are **DENIED as moot**.

Dated at Milwaukee, Wisconsin on September 16, 2026.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge